UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80418-CIV-MARRA

SCOTTSDALE INSURANCE COMPANY, a
foreign company,

Plaintiff,

vs.

SAKEENA SHAGEER, an individual and
MICHAEL IRELAND, an individual,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Plaintiff Scottsdale Insurance Company's Motion for Summary Judgment (DE 14).  The motion is fully briefed and ripe for review.  The Court has carefully considered the motion and is otherwise fully advised in the premises.

I.  Background

The facts, as culled from affidavits, exhibits, depositions, answers, answers to interrogatories and reasonably inferred therefrom in the light most favorable for the defendants, for the purpose of this motion, are as follows:

Plaintiff Scottsdale Insurance Company ("Plaintiff") issued to Cheetah Casablanca East, LLC ("Cheetah") a commercial general liability policy of insurance with Policy Number BCS0016324 (the "Policy") and effective dates from December 17, 2007 to December 17, 2008. (Policy, Ex. A, DE 14.)  Defendant Sakeena Shageer was an exotic dancer at Cheetah's and was working there as an exotic dancer on September 26, 2008. (Sakeena Shageer Dep. at 9-10, 12.) Ms. Shageer, like other dancers at Cheetah's, did not receive any compensation from Cheetah's.

(Shageer Dep. at 11.)  Cheetah's allows the dancers to rent the stage to perform, and the dancers pay Cheetah's a $10 "house fee" and a $5 fee for each "friction dance" they get to perform. (Rodney Kimbrough Dep. at 52-53, 83.)  The dancers make money from their tips. (Shageer Dep. at 11; Kimbrough Dep. at 83.)  Ms. Shageer differentiated herself from the waitresses and bartenders who punched a clock and got a check from Cheetah's, and she testified that meant she was an independent contractor. (Shageer Dep. at 66.)

Ms. Shageer was permitted to establish her own schedule and was allowed to dance at other clubs, but she had to work at least four days each week at Cheetah's. (Shageer Dep. at 11, 29, 64; Kimbrough Dep. at 56.)  Generally, dancers are allowed the opportunity to choose whatever shifts they want and to sign up for any available slots. (Kimbrough Dep. at 88.)   With respect to the dancers' attire, they need to wear high-heeled shoes and bikini-like clothing. (Shageer Dep. at 30-32.)  In addition, they must wear thong underwear when giving a "friction dance." (Shageer Dep. at  55).

Mr. Kimbrough, the club manager, testified that they do not tell the dancers "how to perform their job." (Kimbrough Dep. at 54.)  He also testified that the procedure is to tell the dancers that there is "no sex, no drugs, no prostitution" and the dancers are shown "how to do things throughout the club." (Kimbrough Dep. at 55.)  Dancers cannot solicit drinks from customers because that is against the law. (Kimbrough Dep. at 55.)  With respect to performing, dancers must be topless by the end of the first song and, by the beginning of the third song, they must be totally nude. (Kimbrough Dep. at 55.)   The disc jockey controls the order in which the dancers perform. (Kimbrough Dep. at 91-92.)

On the night in question, Ms. Shageer had finished her dance routine and was walking

2

around the top of the bar to collect tips when Defendant Michael Ireland slapped her on the buttocks. (Shageer Dep. at 14-16.)  Sara Hoth, who was bartending that night at Cheetah's, heard a loud smack and turned to see Mr. Ireland hands on Ms. Shageer's buttocks and Ms. Shageer looking terrified.  (Sara Hoth Dep. at 46.)  She then saw Ms. Shageer kick her leg back at Mr. Ireland, but noted that Ms. Shageer did not swing around and kick him.  (Hoth Dep. at 46, 48-50.)  Ms. Shageer did not actually see Mr. Ireland strike her,[1] but as soon as she turned around, he was the only man standing there.  (Shageer Dep. at 16.)  Immediately, she reacted and kicked him.  (Shageer Dep. at 17, 47.)  She testified that "instinct" told her that it was him and she swung around and kicked him.  (Shageer Dep. at 45.)  Mr. Ireland had struck Ms. Shageer "very hard" and she had a mark from where he had struck her.  (Shageer Dep. at 14, 17.)

Ms. Shageer told other people the incident was an accident. (Shageer Dep. at 47, 52-53.)  The only reason she struck Mr. Ireland was because he struck her.  (Shageer Dep. at 60.)   Ms. Shageer testified that, "My leg did kick out instinctively, but I did want to hurt him." (Shageer Dep. at 46.)  She further stated, "I didn't mean to bust up his face like that . . ." (Shageer Dep. at 46) and "I didn't want to hurt him as much as I did. Like I didn't want to bust up his eye or anything . . ." (Shageer Dep. at 61).

Ms. Shageer testified that Cheetah's is "not really responsible for her actions." (Shageer Dep. at 39.)  After the incident giving rise to this lawsuit occurred, Mr. Kimbrough asked Ms. Shageer to execute certain documents including an independent contractor agreement and a dancer licensing agreement. (Shageer Dep. 38; Independent Contractor Agreement, Ex. A, DE

---

[1] In fact, Ms. Shageer did not see Mr. Ireland until after he struck her. (Shageer Dep. at 13.)

27; Dancer Licensing Agreement, Ex. B, DE 27.) She worked at Cheetah's for a few more weeks after the incident, and then stopped. (Shageer Dep. at 10; Kimbrough Dep. at 94.)

On or about May 28, 2009, Mr. Ireland sued Ms. Shageer and Cheetah's in a lawsuit styled Michael Ireland v. Casablanca East, LLC and Sakeena Shageer, case number 50-2009-CA-018867xxxxMB, in the 15th Judicial Circuit in and for Palm Beach County, Florida ("underlying lawsuit"). (Underlying lawsuit, Ex. E, DE 14.) Plaintiff defended Cheetah's under a reservation of rights. (Matt Smith Aff. ¶ 6, Ex. F, DE 14.) According to a representative of Plaintiff's, Ms. Shageer never requested that Plaintiff defend her, and a default was entered against her in the underlying lawsuit. (Smith Aff. ¶ 8; Default, Ex. G, DE 14.) On or about December 4, 2009, Plaintiff learned that Mr. Ireland dropped Cheetah's as a defendant in the underlying lawsuit. (Smith Aff. ¶ 10.) Plaintiff suspected the strategy reason for dropping Cheetah's was to proceed against Ms. Shageer, who was undefended, to obtain a higher judgment for damages and in turn seek to collect that judgment from Plaintiff. (Smith Aff. ¶ 11.) To protect its interests, Plaintiff reached out to Ms. Shageer to offer her a defense. (Smith Aff. ¶ 13.)

Ms. Shageer states that no one at Cheetah's told her that an attorney for their insurer would defend her or that Cheetah's blamed her for the incident. (Shageer Aff. ¶¶ 7-8, Ex. C, DE 27-4.) Nor did Plaintiff tell her that an attorney would defend her pending a determination of coverage, and she did not realize she was without counsel during her deposition until Mr. Ireland's counsel began asking her whether she was aware that Cheetah's blamed her for causing the incident. (Shageer Aff. ¶¶ 9-10.) Plaintiff stated that as a result of it not assuming her defense, a default was entered against her. (Shageer Aff. ¶ 11.) Nearly a year after the underlying litigation began, Ms. Shageer received a letter from Plaintiff stating it would defend

4

her in the underlying lawsuit subject to a determination of coverage. (Shageer Aff. ¶ 12.)

Plaintiff claims it is entitled to summary judgment on the basis that it has no duty to defend or indemnify Ms. Shageer for the claims and damages alleged by Mr. Ireland in the underlying lawsuit.  In so moving,  Plaintiff argues that Ms. Shageer's intentional act of kicking Mr. Ireland is not a covered "occurrence" under the policy, and Mr. Ireland's claims and alleged damages are excluded from coverage by the expected or intended injury exclusion under the policy.  Furthermore, Plaintiff contends Ms. Shageer does not qualify as an insured under the policy because she was an independent contractor, not a Cheetah's employee. Finally, Plaintiff claims that it has no duty to defend or indemnify Ms. Shageer because she never formally requested a defense.

In response, Mr. Ireland contends that there are genuine issues of fact precluding summary judgment: namely, whether Ms. Shageer was an employee or independent contractor and whether Ms. Shageer "intentionally" kicked Mr. Ireland.  Ms. Shageer responds that she was an employee of Cheetah's.  Moreover, she claims that her act of kicking her leg in response to being smacked constitutes an "occurrence" under the policy's definition.

II. Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is

unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

6

<u>III. Discussion</u>

The parties agree that the pertinent portions of the insurance policy with respect to this motion are:

Section I - Coverages

1. Insuring Agreement
(b) This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

2. Exclusions
This insurance does not apply to:
a. Expected or Intended Injury
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Section II - Who is an Insured

2. Each of the following is also an insured:
(a)  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . .

Section V - Definitions

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The Court begins its analysis by examining whether Ms. Shageer is an insured under the policy. The parties agree that Ms. Shageer would only be an insured under the policy if she was an employee of Cheetah's as defined under Section II(2)(a) of the policy. The question then becomes whether Ms. Shageer's role at Cheetah's was as an employee or as an independent contractor.

7

In determining whether an employer-employee relationship exists, Plaintiff directs the Court to the test adopted by the Florida Supreme Court and set forth in Restatement (Second) of Agency § 220.  See Cantor v. Cochran, 184 So. 2d 173 (Fla. 1966); Kane Furniture Corp. v. Miranda, 506 So. 2d 1061 (Fla. Dist. Ct. App. 1987).  The relevant factors to be considered are:

> a) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> (d) the skill required in the particular occupation;
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (f) the length of time for which the person is employed;
> (g) the method of payment, whether by the time or by the job;
> (h) whether or not the work is a part of the regular business of the employer;
> (i) whether or not the parties believe they are creating the relationship of master and servant; and
> (j) whether the principal is or is not in business.

Cantor, 184 So. 2d at 174; Kane, 506 So. 2d at 1063.

Defendants rely on cases interpreting the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (DE 23 at 4; DE 27 at 8.)  Those cases examine "economic dependence" and consider six factors (i) the degree of control exercised by the alleged employer, (ii) the relative investments of the alleged employer and employee, (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer, (iv) the skill and initiative required in performing the job, (v) the permanency of the relationship, and (vi) the degree to which the alleged employee's tasks are integral to the employer's business. Harrell v. Diamond A Entertainment, Inc., 992 F. Supp. 1343, 1347 (M.D. Fla. 1997); see Antenor v. D & S Farms, 88 F.3d 925, 930 (1996) (definition of employment is based on economic dependence); McLauchlin v. Seafood, Inc., 861 F.2d 450, 452 (5th Cir. 1988) (five factors of economic dependence include degree of control, opportunities for

profit or loss, investment in facilities, permanency of relation, and skill required).

Regardless of which approach the Court follows here, the result would be the same. Under both approaches, a critical factor to consider is the extent of control. Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A., 104 F.3d 1256, 1266 (11th Cir. 1997); Kane, 506 So. 2d at 1064 citing T & T Communications v. State, Department of Labor and Employment Security, 460 So. 2d 996 (Fla. Dist. Ct. App. 1984); VIP Tours of Orlando, Inc. v. State, Department of Labor and Employment Security, 449 So. 2d 1307 (Fla. Dist. Ct. App. 1984).

Moreover, whether a person is an employee or an independent contractor is a question of fact for the jury. Garcia, 104 F.3d at 1266; see also Sagarino v. Marriott Corp., 644 So. 2d 162, 164 (Fla. Dist. Ct. App. 1994) ("The question of whether there exists an employer/employee relationship is normally reserved for the jury"); Carroll v. Kencher, Inc., 491 So. 2d 1311, 1313 (Fla. Dist. Ct. App. 1986) ("When there are varying inferences and conclusions which can be drawn from the facts . . . the issue of whether an individual is an employee or an independent contractor should be submitted to the jury"); Pearson v. Harris, 449 So. 2d 339, 342 (Fla. Dist. Ct. App. 1984) (the existence of an employer-employee relationship is normally one for the jury to decide); Saudi Arabian Airlines Corp. v. Dunn, 438 So. 2d 116, 119 (Fla. Dist. Ct. App. 1983) (recognizing the existence of an employer-employee relationship is normally one for the jury to decide); U.S. Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 1.10.4.1, Comment (West 2005) (whether a person is an employee or independent contractor is a question of fact for the jury).

Plaintiff points to the following record evidence in arguing that Ms. Shageer was an independent contractor: (1) Ms. Shageer controlled her own schedule; (2) she did not receive a paycheck from Cheetah's, but relied instead on patron tips, a portion of which she paid to Cheetah's;

(3) she was not required to punch in and (4) she was permitted to work at other establishments.[2] (DE at 14.)  In contrast, Defendants rely upon other record evidence to support a finding that there is a material issue of fact that Ms. Shageer was an independent contractor; namely, (1) the requirement that she work four days a week; (2) requirement that she wear bikini-like clothing and high heeled shoes; (3) the control by the disc jockey over the order the dancers perform and (4) the requirement that dancers dance topless during the first song and dance nude by the third song. (DE 23 at 5; DE 27 at 10.)

Each of these various factors must be weighed by a fact finder.  A fact finder could conclude that some of these factors are entitled to more weight than others in making a determination as to whether Ms. Shageer was an employee or an independent contractor. Depending on how these factors are weighed may result in differing conclusions on this issue.  Cf. Harrell, 992 F. Supp. at 1354 (in finding an exotic dancer an employee under FLSA, the Court noted, among other factors, that exotic dancers are obviously essential to the success of a topless nightclub); Reich v. Priba Corp., 890 F. Supp. 586, 592 (N.D. Tex. 1995) (in finding an exotic dancer an employee under the FLSA, the Court stated that the dancer does not control a meaningful part of the business wherein the defendants control the atmosphere, surroundings and advertising without which the dancers could not survive).  For this reason, the Court cannot decide, as a matter of law, that Ms. Shageer was an independent contractor and therefore not covered as an insured under the policy.

The next inquiry for the Court concerns whether Ms. Shageer's kicking of Mr. Ireland is a covered "occurrence" under the policy.   While "occurrence" is defined as "an accident, including

---

[2] To the extent the Court does not list other factors relied upon by Plaintiff, the record did not support those factors.

continuous or repeated exposure to substantially the same general harmful conditions" (Section V(13)), the term "accident" is not defined in the policy. The Florida Supreme Court has, however, defined the term "accidental," as used in a liability policy, to mean "unexpected or unintended." Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Corp., 636 So. 2d 700, 704 (Fla. 1993). Furthermore, an accident encompasses "injuries or damage neither expected nor intended from the standpoint of the insured." State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So. 2d 1072, 1076 (Fla. 1998).

The Court finds that there is a genuine issue of material fact regarding whether Ms. Shageer acted with intent when she kicked Mr. Ireland. Taking the evidence in the light most favorable to Defendants, the non-moving parties, the Court finds that a reasonable fact finder could conclude that Ms. Shageer's kicked her leg back instinctively in response to being slapped hard by Mr. Ireland.  Indeed, Ms. Shageer testified that she acted instictively and that she immediately reacted. This conclusion is also buttressed by Ms. Shageer's testimony that she told other people she kicked Mr. Ireland accidently. Although Plaintiff relies upon Ms. Shageer's statement that, "My leg did kick out instinctively, but I did want to hurt him," the Court is unable to resolve these differing statements on a motion for summary judgment, especially when the Court must take all the statements in the light most favorable to Ms. Shageer, and not Plaintiff.[3]

Finally, Plaintiff contends that it has no duty to defend or indemnify Ms. Shageer because she never formally requested a defense.  Plaintiff claims that Ms. Shageer never tendered  her

---

[3] Likewise, the Court is unable to resolve whether Mr. Ireland's claims and alleged damages are excluded from coverage by the expected or intended injury exclusion because this provision of the policy bars coverage for "bodily injury" or "property damages" expected or intended from the standpoint of the insured.  On this record, Ms. Shageer's intent cannot be discerned.

defense and mere knowledge by the insurer of a potentially covered claim is not enough to constitute a tender.  In making this argument, Plaintiff relies heavily on precedent from the United States Court of Appeals for the Seventh Circuit. (DE 14 at 15.)  In response, Ms. Shageer asserts that she has not refused to cooperate or refused to allow Plaintiff to defend her.  In support, she states that no one at Cheetah's told her that an attorney for their insurer would defend her or that Cheetah's blamed her for the incident. (Shageer Aff. ¶¶ 7-8.)  Nor did Plaintiff tell her that an attorney would defend her pending a determination of coverage, and she did not realize she was without counsel until Mr. Ireland's counsel began asking her whether she was aware that Cheetah's blamed her for causing the incident. (Shageer Aff. ¶¶ 9-10.)  Plaintiff stated that as a result of Plaintiff not assuming her defense, a default was entered. (Shageer Aff. ¶ 11.)  Nearly a year after the underlying litigation began, Ms. Shageer received a letter from Plaintiff stating it would defend her in the underlying lawsuit subject to a determination of coverage. (Shageer Aff. ¶ 12.)

     Here, Plaintiff does not dispute that it had knowledge of the underlying lawsuit.  Indeed, Plaintiff actively defended Cheetah's in the underlying lawsuit and is currently defending Ms. Shageer in that lawsuit.  Instead, Plaintiff argues that Ms. Shageer failed to provide a "formal tender" and that failure relieves Plaintiff of its obligation to defend her.  However, the Seventh Circuit cases relied upon by Plaintiff have different factual scenarios than presented here.  For example, in Aetna Cas. & Sur. Co. v. Chicago Ins. Co., 994 F.2d 1254 (7th Cir. 1993), the insured knew he was covered by multiple insurance policies.   Here, the record evidence shows that Ms. Shageer was unaware that, as a possible employee of Cheetah's, she maybe an insured under the policy.  Furthermore, in Hartford Accident and Indem. Co. v. Gulf Ins. Co., 776 F.2d 1380 (7th Cir. 1985), the court noted, without deciding, that there would necessarily be differences between a

"large and sophisticated governmental entity that is advised and assisted by its own counsel" versus "unschooled laymen" "who may be excused from any sort of active tender" with respect to the requirements of notice. Id. at 1383.[4] Ms. Shageer may indeed constitute an "unschooled layman" given that she was under the mistaken impression that she was represented by counsel during her deposition, and only discovered during the deposition that Cheetah's blamed her for the incident. Moreover, Plaintiff's representative states it reached out to Ms. Shageer to "protect its interests" in the underlying case. (Smith Aff. ¶ 12.) It seems particularly unjust for an insurer to "protect its interests" by reaching out to a potential insured in an underlying action, only to allow that insurer to obtain a ruling that it has no duty to defend because the potential insured did not provide a formal tender.

Lastly, there is also precedent from other jurisdictions supporting the position that "[i]f an insurer receives actual notice of a lawsuit against its insured, even if from another insured, its duty to defend is triggered at the time that it receives actual notice of the law suit." 14 Couch on Ins. § 200.3.1 (Westlaw 2010) citing Federated Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 668 N.E.2d 627 (Ill. App. Ct. 1996); see also BBL-McCarthy, LLC v. Baldwin Paving Co., 646 S.E.2d 682, 686 (Ga. Ct. App. 2007) (insurer has duty to defend when insurer has actual notice of claim against additional insured, whether or not that claim was specifically tendered by the additional insured). For all these reasons, the Court declines to adopt the reasoning of the Seventh Circuit cases to the factual scenario presented here.

---

[4] American States Ins. Co. v. Pioneer Electric Co., 85 F. Supp. 2d 1337 (S.D. Fla. 2000), which is also cited by Plaintiff, is equally inapplicable. There, the insured did not simply fail to request a defense, but refused to cooperate with the insurer or respond to the insurer's attempt at contact. Id. at 1343.

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff Scottsdale Insurance Company's Motion for Summary Judgment (DE 14) is **DENIED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 1st day of December, 2010.

_____
KENNETH A. MARRA
United States District Judge